# In the United States Court of Federal Claims

BID PROTEST
No. 20-1565C
Filed Under Seal: December 21, 2020
Reissued: January 7, 2021[*]

| | |
|---|---|
| BRIGHTON CROMWELL, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Post-Award Bid Protest; Preliminary |
| v. ) | Injunction; Temporary Restraining Order; |
| ) | RCFC 65. |
| THE UNITED STATES, ) | |
| ) | |
| Defendant. ) | |

*Julie M. Nichols*, Counsel of Record, *James S. Phillips,* Roeder, Cochran, Phillips, PLLC, McLean, VA, for plaintiff.

*Sarah E. Kramer*, Trial Attorney, *Douglas K. Mickle*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, *Jeffrey Bossert Clark*, Acting Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC; *Allison Eck*, Senior Counsel, DLA Troop Support, for defendant.

## MEMORANDUM OPINION AND ORDER

GRIGGSBY, Judge

## I.    INTRODUCTION

Plaintiff, Brighton Cromwell, LLC ("Brighton Cromwell"), brings this post-award bid protest matter challenging the Defense Logistic Agency's ("DLA") evaluation process and award decisions in connection with the award of several indefinite-delivery, indefinite quantity ("IDIQ") contracts for Level 2 Disposable Isolation Gowns. Brighton Cromwell has moved for a preliminary injunction and for a temporary restraining order seeking to, among other things,

---

[*] This Memorandum Opinion and Order was originally filed under seal on December 21, 2020. ECF No. 27. The parties were given an opportunity to advise the Court of their views with respect to what information, if any, should be redacted from the Memorandum Opinion and Order. On December 31, 2020, plaintiff filed a notice on behalf of the parties stating that no redactions are necessary. ECF No. 28. And so, the Court is reissuing its Memorandum Opinion and Order, dated December 21, 2020.

enjoin the DLA from continuing with the performance of the IDIQ contracts, pursuant to Rule 65 of the Rules of the United States Court of Federal Claims ("RCFC"). *See generally* Pl. Mot.; Pl. Mem. For the reasons discussed below, the Court **DENIES** Brighton Cromwell's motion for a preliminary injunction and for a temporary restraining order.

## II.    FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.    Factual Background

This bid protest dispute involves a challenge to the DLA's evaluation process and award decisions in connection with the award of ten IDIQ contracts for Level 2 Disposable Isolation Gowns. The contracts at issue were awarded pursuant to the DLA's Solicitation No. SPE1C1-20-R-0138 (the "Solicitation"). Compl. at ¶ 15; Pl. Ex. A. Brighton Cromwell is an unsuccessful offeror in connection with that procurement. Compl. at ¶ 4

Specifically, Brighton Cromwell raises three objections to the DLA's evaluation process and award decisions, namely that: (1) the DLA improperly utilized unstated evaluation criteria to evaluate Brighton Cromwell's proposal, in violation of FAR § 15.305; (2) the DLA failed to seek clarification from Brighton Cromwell regarding its proposal, in violation of FAR § 15.306; and (3) the DLA subjected Brighton Cromwell to partial and disparate treatment, in violation of FAR § 1.102-2. Pl. Mem. at 7-10. And so, Brighton Cromwell requests, among other things, that the Court enjoin the DLA from continuing with the performance of these contracts. *Id.* at 13.

#### 1.    The Solicitation

As background, on July 20, 2020, the DLA issued the Solicitation to supply the United States Department of Health and Human Services ("HHS") with necessary personal protective equipment ("PPE") to allow medical workers and frontline responders to combat the ongoing

---

[1] The facts recited in this Memorandum Opinion and Order are taken from Brighton Cromwell's complaint ("Compl.") and the exhibits attached thereto ("Pl. Ex."); Brighton Cromwell's motion for a preliminary injunction and for a temporary restraining order ("Pl. Mot.") and the memoranda in support thereof ("Pl. Mem."); the government's response and opposition to Brighton Cromwell's motion for a preliminary injunction and for a temporary restraining order ("Def. Resp."); the government's appendix ("A___"); and Brighton Cromwell's reply in support of its motion for a preliminary injunction and for a temporary restraining order ("Pl. Reply"). Except where otherwise noted, the facts cited herein are undisputed.

coronavirus pandemic.  Compl. at ¶ 15; Def. Mot. at 4.  The Solicitation provides that the offerors who submit the lowest-priced technically acceptable proposals would be awarded contracts to support the government's cumulative estimated requirements of 190 million gowns.  Compl. at ¶¶ 20-21.  Under the terms of the Solicitation, each offeror submitted preproduction demonstration model ("PDM") gowns that the DLA subjected to visual, dimensional and manufacturing requirements, to ensure that the gowns would, among other things, "provide 360-degree protection."  *Id.* at ¶ 21; Pl. Ex. A at 14.

The Solicitation also requires that PDM gowns "shall be free from defects."  Pl. Ex. A at 15.  The Solicitation contains a detailed list of "end item visual defects," which includes:  (1) "[a]ny component part misplaced or required operation omitted, not as specified, distorted, full, tight or twisted;" (2) "[a]ny component part twisted, distorted, pleated, misshaped, tight or full;" (3) "[f]ullness creating unwanted permanent, fold, pleat, crease, in fabric or garment;" and (4) "missing or detached closure ties or other fasteners."  *Id.* at 15-16.

Brighton Cromwell submitted four timely proposals in response to the Solicitation.  Compl. at ¶ 28; Def. Mot. at 7; Tr. at 9:13-9:14.  On August 27, 2020, the DLA notified Brighton Cromwell that its proposals were "ineligible to receive award," because Brighton Cromwell did not provide tape closures with its PDM gowns, as required by the Solicitation.  Compl. at ¶ 38; Pl. Ex. D.  On August 28, 2020, Brighton Cromwell filed a formal debriefing request and Brighton Cromwell was reinstated into the competition.  Compl. at ¶¶ 39, 40; Pl. Ex. F.

During subsequent negotiations with the DLA, the DLA informed Brighton Cromwell that its PDM gowns were "insufficient."  A12.  The DLA requested that Brighton Cromwell provide step-by-step directions for closing its gowns and explain how these directions would be communicated to the customer.  *Id.*

Thereafter, Brighton Cromwell provided the DLA with step-by-step directions for closing its PDM gowns, using both excess fabric and the tape closure method, as well as instructions explaining how the customer would close the gowns.  *Id.*; *see also* Pl. Ex. E at 5-8.

On September 2, 2020, the DLA's contracting officer notified Brighton Crowell that it was eliminated from the competition, because its PDM gowns had "excess fabric" and did not come with tape closures, in violation of the technical requirements of the Solicitation.  *Id.* at ¶ 42; Pl. Ex. H at 1.

3

### 2. The Contract Awards And Agency-Level Protest

After the DLA awarded several contracts to other offerors, Brighton Cromwell submitted a formal agency-level protest of the agency's award decisions to the DLA's contracting officer on September 14, 2020.  Compl. at ¶ 47; Pl. Exs. B, C.  After the DLA denied this protest, Brighton Cromwell filed this bid protest action on November 10, 2020.  *See generally* Compl.

### B. Procedural Background

Brighton Cromwell commenced this action on November 10, 2020.  *Id.*  On November 16, 2020, the Court issued a Protective Order in this matter.  *See generally* Protective Order.

On November 13, 2020, Brighton Cromwell filed a motion for a preliminary injunction and for a temporary restraining order and a memorandum in support thereof.  *See generally* Pl. Mot.; Pl. Mem.  On November 20, 2020, the government filed a response and opposition to Brighton Cromwell's motion for a preliminary injunction and for a temporary restraining order.  *See generally* Def. Resp.  On November 25, 2020, Brighton Cromwell filed a reply in support of its motion for a preliminary injunction and for a temporary restraining order.  *See generally* Pl. Reply.

On December 8, 2020, the Court held oral arguments on Brighton Cromwell's motion for a preliminary injunction and for a temporary restraining order.  *See generally* Tr.  The Court issued an oral opinion during the hearing denying Brighton Cromwell's motion for a preliminary injunction and for a temporary restraining order.  Tr. at 36:25-45:7.  The Court now issues this written opinion consistent with its prior oral ruling in this matter.

## III. LEGAL STANDARDS

### A. Jurisdiction And Bid Protests

The Tucker Act grants the United States Court of Federal Claims jurisdiction over bid protests brought by "an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement."  28 U.S.C. § 1491(b)(1).  In bid protest cases, this Court reviews agency actions under the Administrative Procedure Act's ("APA") "arbitrary and capricious" standard.  *See* 28 U.S.C. § 1491(b)(4) (adopting the standard of review set forth in the Administrative Procedure

Act).  And so, under the APA's standard, an award may be set aside if, "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure."  *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004) (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)).

The United States Court of Appeals for the Federal Circuit has recognized that:

> When a challenge is brought on the first ground, the test is whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a "heavy burden" of showing that the award decision had no rational basis.  When a challenge is brought on the second ground, the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations.

*Id*. (citations omitted).

### B.     Preliminary Injunctions And RCFC 65

The Tucker Act authorizes this Court to "award any relief that the court considers proper, including . . . injunctive relief" in bid protest matters.  28 U.S.C. § 1491(b)(2); *see* RCFC 65.  But, "a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis omitted) (citation omitted); *Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993) (The award of "a preliminary injunction is a drastic and extraordinary remedy that is not to be routinely granted.").

In deciding whether to grant emergency injunctive relief, the Federal Circuit has directed that the Court consider:  (1) whether the plaintiff is likely to succeed on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the Court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief.  *PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004); *see also FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993); *OAO Corp. v. United States,* 49 Fed. Cl. 478, 480 (2001).

In addition, the Federal Circuit has held that "[n]o one factor, taken individually, is necessarily dispositive. . . .  [T]he weakness of the showing regarding one factor may be overborne by the strength of the others."  *FMC Corp.*, 3 F.3d at 427.  Conversely, "the absence

5

of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned the other factors, to justify the denial" of a motion for a preliminary injunction. *Id*. And so, the Federal Circuit has held that "a movant is not entitled to a preliminary injunction if he fails to demonstrate a likelihood of success on the merits." *Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.*, 357 F.3d 1319, 1325 (Fed. Cir. 2004).

### C. Unstated Evaluation Criteria And Disparate Treatment

FAR § 15.305(a) provides that "[a]n agency shall evaluate competitive proposals and then assess their relative qualities solely on the factors and subfactors specified in the [S]olicitation." FAR § 15.305(a). The Federal Circuit has held that, to succeed upon an unstated evaluation criteria claim, a protestor must show that: (1) the agency used a significantly different basis in evaluating its proposals than was disclosed and (2) that the protestor has been prejudiced as a result. *Banknote Corp. of Am. v. United States*, 56 Fed. Cl. 377, 387 (2003), *aff'd*, 365 F.3d 1345 (Fed. Cir. 2004).

FAR § 1.102-2(c)(3) also provides that "[a]ll contractors and prospective contractors shall be treated fairly and impartially but need not be treated the same." FAR § 1.102-2(c)(3). And so, the Federal Circuit has held that, to succeed upon a disparate treatment claim, a protestor must show that the agency "downgraded its proposal for deficiencies that were 'substantively indistinguishable' or nearly identical from those contained in other proposals." *Office Design Grp. v. United States*, 951 F.3d 1366, 1372 (Fed. Cir. 2020).

### IV. LEGAL ANALYSIS

In this post-award bid protest dispute, Brighton Cromwell seeks to enjoin the performance of the contracts at issue upon the grounds that the DLA improperly utilized an unstated evaluation criteria, failed to seek clarification and subjected Brighton Cromwell to disparate treatment during the competition for these contracts. Pl. Mot. at 2; Pl. Mem. at 7-11. In support of its request for emergency injunctive relief, Brighton Cromwell argues that: (1) there is a substantial likelihood that it will succeed upon the merits of its bid protest claims; (2) it will suffer immediate irreparable harm absent injunctive relief, due to the loss of revenue; (3) the balance of the hardships weigh in favor of granting injunctive relief in this case; and (4) awarding such relief would serve the public interest, by preserving the integrity of the competitive procurement process. Pl. Mem. at 7-13.

In its response and opposition to Brighton Cromwell's motion, the DLA counters that the DLA's evaluation process and award decisions were reasonable and consistent with the terms of the Solicitation and applicable law. Def. Resp. at 2. The government also argues that Brighton Cromwell has not shown irreparable harm and that the balance of the hardships and public interest in this case weigh heavily against an injunction, because an injunction would seriously impede the government's ability to procure PPE during the ongoing coronavirus pandemic. *Id.* at 23-27. And so, the government requests that the Court deny Brighten Cromwell's motion for a preliminary injunction and for a temporary restraining order. *Id.* at 27.

For the reasons set forth below, a careful review of the complaint and the record evidence currently before the Court shows that Brighton Cromwell has not demonstrated a substantial likelihood of success upon the merits of any of its bid protest claims. And so, the Court **DENIES** Brighton Cromwell's motion for emergency injunctive relief.

### A. Brighton Cromwell Has Not Shown A Substantial Likelihood Of Success On Its Unstated Evaluation Criteria Claim

As an initial matter, Brighton Cromwell has not demonstrated a substantial likelihood of success upon the merits of its claim that the DLA violated FAR § 15.305 by improperly utilizing an unstated evaluation criteria, because the record evidence currently before the Court shows that the DLA rejected Brighton Cromwell's PDM gowns based upon the Solicitation's requirements regarding gown fullness. Pl. Ex. H; Pl. Ex. A at 15.

FAR § 15.305(a) requires that "[a]n agency shall evaluate competitive proposals and then assess their relative qualities solely on the factors and subfactors specified in the [S]olicitation." FAR § 15.305(a). And so, to succeed upon its unstated evaluation criteria claim here, Brighton Cromwell must show that the DLA used a significantly different basis in evaluating its proposals than was disclosed in the Solicitation and that it has been prejudiced as a result. *Banknote Corp. of Am. v. United States*, 56 Fed. Cl. 377, 387 (2003), *aff'd*, 365 F.3d 1345 (Fed. Cir. 2004).

Brighton Cromwell has not made such a showing here. Brighton Cromwell argues that the DLA improperly employed an unstated evaluation criteria when the agency rejected its PDM gowns due to "excess fabric," because "[t]he Solicitation does not contain a technical evaluation requirement or factor that calls for elimination [of a PDM gown based upon] 'excess fabric.'" Pl. Mem. at 8; *see also* Pl. Ex. H. While Brighton Cromwell correctly observes that the

7

Solicitation does not contain the words "excess fabric," the record evidence before the Court shows that the Solicitation does require that PDM gowns "shall be free from defects," including any component part that is "full," or has "fullness creating unwanted permanent, fold, pleat, crease, in fabric or garment." Pl. Ex. A at 15-16. Given this, the record evidence currently before the Court indicates that the DLA's decision to reject Brighton Cromwell's PDM gowns due to "excess fabric" was based upon the Solicitation's stated requirement that these gowns "shall be free from [the] defects" listed in the Solicitation, including the defect of gown fullness. *Id.* at 15. And so, Brighton Cromwell has not shown that there is a substantial likelihood that it will succeed upon the merits of its unstated evaluation criteria claim.

### B. Brighton Cromwell Has Not Shown A Substantial Likelihood Of Success On Its Claim That The DLA Failed To Seek Clarification

Brighton Cromwell also has not demonstrated a substantial likelihood of success upon the merits of its claim that the DLA violated FAR § 15.306 by failing to seek clarification about its proposed gown design. FAR § 15.306(a)(2) provides that "[i]f award will be made without conducting discussions, offerors may be given the opportunity to clarify certain aspects of proposals . . . or to *resolve minor or clerical errors*." FAR § 15.306(a)(2) (emphasis added).

In its motion for emergency injunctive relief, Brighton Cromwell argues that the DLA's contracting officer abused her discretion during the evaluation process by failing to hold discussions with Brighton Cromwell about the lack of tape closures on its PDM gowns and about the "excess fabric" in these gowns. Pl. Mem. at 10; Tr. at 18:8-18:15. Brighton Cromwell's argument lacks persuasion for two reasons.

First, Brighton Cromwell has not shown that the clarification requirement in FAR § 15.306(a)(2) is applicable to this case. The record evidence currently before the Court shows that Brighton Cromwell's proposals were deemed to be technically unacceptable by the DLA due to "excess fabric" and the lack of tape closures on the PDM gowns. Pl. Ex. C. And so, the DLA's concerns about Brighton Cromwell's proposals do not appear to be related to "minor or clerical errors" that could be clarified pursuant to FAR § 15-306. *Id.*; FAR § 15.306(a)(2).

Second, and more importantly, the record evidence currently before the Court shows that the DLA engaged in discussions with Brighton Cromwell regarding the lack of tape closures and "excess fabric" in its PDM gown design. Pl. Ex. C. Specifically, the source selection decision

8

for the DLA's award decisions states that the DLA informed Brighton Cromwell of the fact that its PDM gowns were "insufficient" during the evaluation process. A12. The DLA's source selection decision also shows that the DLA afforded Brighton Cromwell the opportunity to remedy this concern, by allowing Brighton Cromwell to provide additional documentation to show, among other things, how its gowns are to be tied. *Id.* In fact, it is undisputed that Brighton Cromwell provided the DLA with step-by-step directions for closing its gowns, as well as with instructions to explain how the customer would secure the gowns. Def. Resp. at 8 (quoting A12); Compl. at ¶ 39 (citing Pl. Ex. E).

Given this, the current record evidence before the Court makes clear that the DLA engaged in meaningful discussions with Brighton Cromwell during the procurement process. And so, Brighton Cromwell has not shown that there is a substantial likelihood that it will succeed upon the merits of this claim.

### C. Brighton Cromwell Has Not Shown A Substantial Likelihood Of Success On Its Disparate Treatment Claim

Lastly, Brighton Cromwell has similarly failed to demonstrate a substantial likelihood of success upon the merits of its disparate treatment claim. Brighton Cromwell argues that the DLA treated it disparately by allowing other offerors that have been awarded contracts by the DLA to modify those contracts post-award. Pl. Mem. at 10-11. FAR § 1.102-2(c)(3) requires that "[a]ll contractors and prospective contractors shall be treated fairly and impartially but need not be treated the same." FAR § 1.102-2(c)(3). And so, to succeed upon the merits of its disparate treatment claim, Brighton Cromwell must show that the DLA "downgraded its proposal for deficiencies that were 'substantively indistinguishable' or nearly identical from those contained in other proposals." *Office Design Grp. v. United States*, 951 F.3d 1366, 1372 (Fed. Cir. 2020). Again, Brighton Cromwell has not made such a showing.

Brighton Cromwell points to no evidence to show that the deficiencies identified in its own PDM gowns—excess fabric and missing tape closures—are "substantially indistinguishable" from any deficiencies identified in the proposals submitted by the contract awardees. *See* Pl. Mem. at 10-11. In fact, Brighton Cromwell does not even allege that the contract awardees proposed a gown design that contained excess fabric or missing tape closures. Tr. at 16:12-16:13; *see also* Pl. Exs. O and P.

It is also undisputed that, unlike the contract awardees, the DLA found Brighton Cromwell's PDM gowns to be technically unacceptable. Pl. Mem. at 5; Def. Resp. at 8, 22; *see also* Pl. Ex. D. Given this, Brighton Cromwell simply has not shown that the DLA treated it disparately or unfairly during the evaluation process. And so, Brighton Cromwell has not shown that there is a substantial likelihood that it will succeed upon the merits of its disparate treatment claim.

### D.    Brighton Cromwell Is Not Entitled To Injunctive Relief

Because Brighton Cromwell has not shown that there is a substantial likelihood that it will succeed upon the merits of any of its bid protest claims, it also has not shown an entitlement to the emergency injunctive relief that it seeks in this case. *Nat'l Steel Car, Ltd. v. Canadian Pacific Ry., Ltd.*, 357 F.3d 1319, 1325 (Fed. Cir. 2004) ("[A] movant is not entitled to a preliminary injunction if he fails to demonstrate a likelihood of success on the merits."). The Court is also mindful of the public interest in ensuring that the government is able to promptly secure isolation gowns during the ongoing coronavirus pandemic. *See* Tr. at 25:17-26:10. And so, the Court **DENIES** Brighton Cromwell's motion for emergency injunctive relief.

## V.    CONCLUSION

In sum, Brighton Cromwell has not shown a substantial likelihood of success upon the merits of its claims that the DLA employed an unstated evaluation criteria, failed to seek clarification and treated Brighton Cromwell disparately during the competition for the contracts at issue in this bid protest dispute. And so, for the foregoing reasons, the Court **DENIES** Brighton Cromwell's motion for a preliminary injunction and for a temporary restraining order.

Some of the information contained in this Memorandum Opinion and Order may be considered protected information subject to the Protective Order entered in this matter on November 16, 2020. This Memorandum Opinion and Order shall be filed under seal. The parties shall review the Memorandum Opinion and Order to determine whether, in their view, any information should be redacted in accordance with the terms of the Protective Order prior to publication.

After doing so, the parties shall **FILE** a joint status report on or before **January 8, 2021**:

1. Advising the Court of their respective views on how this matter should proceed, including, if appropriate, a proposed schedule for the briefing of cross-motions for judgment upon the administrative record; and
2. Identifying the information, if any, that they contend should be redacted for the Court's opinion, together with an explanation of the basis for each proposed redaction.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby<br>
LYDIA KAY GRIGGSBY<br>
Judge